Date Signed:
September 7, 2017



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MAUI INDUSTRIAL LOAN &<br>FINANCE COMPANY, INC.,<br><br>Debtor. | Case No. 10-00235<br>Chapter 7<br><br><br><br>Re: Docket No. 838 and 869 |

MEMORANDUM OF DECISION ON
TRUSTEE'S MOTION FOR INSTRUCTIONS
AS TO DISTRIBUTION RIGHTS OF CERTAIN CREDITORS

The question presented is whether, in a Ponzi scheme case, the timely-filed claims of investors for lost profits should be paid before or after the untimely-filed claims of investors for lost principal. I conclude that the timely claims should be paid first, including the lost profits portion of the timely claims.

I.   FACTS

Maui Industrial Loan and Finance Co., Inc. (which did business as Maui Finance Company and which I will call "MFC") was a company that was authorized to make loans but not authorized to accept deposits from the public. Lloyd Kimura

controlled MFC.

After a state regulator ordered MFC to cease doing business, MFC commenced this bankruptcy case.

The court initially fixed May 12, 2010, as the deadline to file proofs of claim, but the claims deadline was later reset to May 17, 2010.[1] Notice of the deadline was given to all creditors and other parties in interest revealed on the debtor's schedules.

In a federal plea agreement, Mr. Kimura admitted that he operated MFC as a Ponzi scheme for about twenty-three years.[2] He caused MFC to "borrow" money from investors in exchange for promised returns, and to repay the loans and the promised returns mostly with funds borrowed from subsequent investors. Eventually, the iron laws of mathematics caused the scheme to collapse.

Also early in the case, the trustee moved the court to separate the investors' unsecured claims into Class A, consisting of lost principal invested, and Class B, consisting of lost profit or benefit of the bargain damages, and to subordinate allowed Class B claims to allowed Class A claims.[3] The trustee recommended this classification in order to treat all investors fairly. The trustee gave notice of the motion to all known

---

[1] Dkts 16 and 22.

[2] *United States v. Kimura*, Case No. 10-CR-00890 (D. Haw.).

[3] Dkt. 234.

2

U.S. Bankruptcy Court - Hawaii   #10-00235   Dkt # 930   Filed 09/07/17   Page 2 of 9

creditors and parties in interest,[4] no one objected to it,[5] and the court entered an order granting it.[6] The order does not distinguish between timely and untimely filed claims.

In the meantime, the trustee engaged in extensive litigation and liquidation efforts. Largely as a result of a carefully planned and skillfully executed litigation program, the trustee today holds about $8 million in funds for distribution.

The timely filed claims amount to about $8.1 million, of which about $5.8 million is the principal amount and about $2.3 million represents investment returns. There are also tardily filed claims totaling about $2.6 million.[7] Many of the late claims were filed less than ten days after the deadline.

The trustee filed a motion for instructions regarding the distribution of those funds. He stated that, when he initially proposed the classification scheme, he had no reason to think that his litigation recoveries would be as large as they turned out to be. Although he made no recommendation, he suggested that it might be appropriate to subordinate the timely filed Class B (lost profits) claims to untimely filed Class A (lost principal) claims.

After the initial hearing on the trustee's motion for instructions, the court

---

[4] Dkt. 236.

[5] Dkt. 250.

[6] Dkt. 253.

[7] Dkt. 838-1, -2, and -3.

3

U.S. Bankruptcy Court - Hawaii   #10-00235   Dkt # 930   Filed 09/07/17   Page 3 of 9

issued an order to show cause directed to eight creditors who filed untimely claims.[8] The order gave those claimants an opportunity to "provide a legally sufficient reason why [their] claim[s] should be treated the same as claims that were filed on time."

Three claimants – Snap-on Credit LLC, Hamai Appliances, Inc., and David and Irene Miyake – filed timely responses to the order.[9] The trustee and other creditors filed replies.[10]

## II. DISCUSSION

11 U.S.C. § 726(a) (in relevant part) provides that the trustee must distribute the property of the estate in the following order:

> (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed . . .
> (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is--
>     (A) timely filed under section 501(a) of this title;
>     (B) timely filed under section 501(b) or 501(c) of this title; or
>     (C) tardily filed under section 501(a) of this title, if--
>         (i) the creditor that holds such claim did not

---

[8] Dkt. 869. The court directed the order to the eight claimants listed as untimely claims in the trustee's motion for instructions. Dkt. 838-2. According to the proof of claim register, many additional parties filed claims after the bar date. Some of those claims have been withdrawn, and others may have been timely under one or more of the exceptions specified in Fed. R. Bankr. P. 3002(c). I assume that the trustee will separately address, as necessary, the other claims filed after the bar date.

[9] Dkts. 893, 895, and 897.

[10] Dkts. 905, 916, and 919.

4

>>> have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
>>> (ii) proof of such claim is filed in time to permit payment of such claim;
>> (3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;
>> (4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim . . . .

### A. The Snap-on Credit LLC Claim Must Be Treated as Timely.

In response to the order to show cause, Snap-on Credit LLC filed a declaration stating that it did not obtain actual knowledge of MFC's bankruptcy filing until January 19, 2011, well after the bar date.[11] The trustee (and the record) confirm that MFC did not list Snap-on as a creditor, and that as a result Snap-on did not receive notice of the bankruptcy filing or the bar date. No one provides any evidence to the contrary. Therefore, section 726(a)(2)(C) applies to Snap-on's claim.

Creditor Jody C. Boeringa points out that Snap-on waited about four months to file its claim.[12] But the statute only requires that a creditor that was ignorant of the bankruptcy filing file its claim "in time to permit payment of such claim." Snap-on

---

[11] Dkt. 893 at 5-6.

[12] Dkt. 919 at 3.

filed its claim in 2011 and only now, in 2017, is the trustee almost able to begin making distributions.

B. The Hamai Appliances and Miyake Claims Were Untimely

Hamai Appliances, Inc., and David and Irene Miyake say that they hired an attorney in March 2010 to represent them in MFC's bankruptcy. Therefore, they knew of MFC's bankruptcy filing well in advance of the May, 17, 2010, bar date. They say that they gave their attorney the information required to file a proof of claim on their behalf but that he inexplicably filed their claims about a week late. (The same attorney filed timely claims for other clients.)

These explanations do not satisfy the requirements of section 726(a)(2)(C). Further, the court may not disregard the late filing of a proof of claim based on the claimant's neglect, even if excusable.[13]

Therefore, the Hamai Appliances and Miyake claims are covered by section 726(a)(3).

C. Timely Class B Claims Must Be Paid Before Untimely Claims.

The trustee suggests (but is careful not to advocate) that the court might clarify its prior order to provide that the Class A portion of untimely filed claims should be

---

[13] *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993) ("The "excusable neglect" standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases.").

6

U.S. Bankruptcy Court - Hawaii    #10-00235    Dkt # 930    Filed 09/07/17    Page 6 of 9

paid before the Class B portion of timely filed claims. He points out that claims for lost investment returns in a Ponzi scheme are unenforceable.[14] This indicates that each Class B claim should be treated as a "fine, penalty, or forfeiture" under section 726(a)(3) and subordinated to all timely and untimely compensatory claims. He suggests that it would be more equitable to pay timely Class A claims first, untimely Class A second, and both timely and untimely Class B claims third.[15] Although I appreciate the trustee for bringing this issue to the surface, I think that the timely filed claims, both Class A and Class B, must be paid before untimely claims.

First, the Class B claims are not unenforceable. All of those claims are the subject of filed proofs of claim. Therefore, they are "deemed allowed" unless and until a party in interest objects to them,[16] and no one has done so.

Second, even if the Class B claims were unenforceable, it would not necessarily follow that section 726(a)(4) would apply. That section applies only to fines, etc., "to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim . . . ." The Class B claims are "compensation for actual pecuniary loss"; they represent the loss of a real amount of

---

[14] *Janvey v. Brown*, 767 F.3d 430, 440-42 (5th Cir. 2014); *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008).

[15] *In re Taubman*, 160 B.R. 964, 980-82 (Bankr. S.D. Ohio 1993).

[16] 11 U.S.C. § 502(a).

7

U.S. Bankruptcy Court - Hawaii   #10-00235   Dkt # 930   Filed 09/07/17   Page 7 of 9

money, the investment returns that MFC promised but did not provide.

Third, the Supreme Court has repeatedly warned that bankruptcy courts may not use their equitable powers to override the Bankruptcy Code. "It is hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code. Section 105(a) confers authority to carry out the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. . . . We have long held that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."[17] Section 726 specifically lays out the order in which claims are paid. The bankruptcy court has no power to overturn the Congressional ordering of distribution rights.[18]

## III. CONCLUSION

For these reasons, the court will instruct the trustee to pay, to the extent funds are available, all timely filed Class A investor claims, then all timely filed Class B investor claims, then all untimely filed Class A investor claims, and then all untimely

---

[17] *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) (citations and internal quotation marks omitted).

[18] The prior order creating the Class A and Class B distinction does not overturn section 726. That order creates subcategories within one of the statutory categories. It does not provide that claims that Congress placed in a lower category will receive distributions before claims in a higher category are paid in full. Further, no one has ever objected to the division of timely claims into two subclasses.

8

U.S. Bankruptcy Court - Hawaii   #10-00235   Dkt # 930   Filed 09/07/17   Page 8 of 9

filed Class B investor claims. Counsel for the trustee shall submit a proposed final judgment.

END OF ORDER

U.S. Bankruptcy Court - Hawaii   #10-00235   Dkt # 930   Filed  09/07/17   Page 9 of 9